**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EVA ARENAS, | ) No. CV 14-9117 AS |
|                  Plaintiff, | ) |
|      v. | ) **MEMORANDUM OPINION AND** |
| | ) **ORDER OF REMAND** |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
|                 Defendant. | ) |

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED that this matter is remanded for further administrative action consistent with this Opinion.

**I. PROCEEDINGS**

On August 10, 2011, Plaintiff Eva Arenas ("Plaintiff") applied for supplemental security income and disability insurance benefits alleging a disabling condition beginning June 30, 2007. (AR 184-93). On January 14, 2013, Administrative Law Judge ("ALJ") Gail Reich

examined the records and heard testimony from Plaintiff, medical experts Thomas Maxwell and Glenn Griffin, and vocational expert ("V.E.") June Hagen. (AR 48-71). On March 18, 2013, the ALJ denied Plaintiff benefits in a written decision. (AR 17-33). The Appeals Council denied review of the ALJ's decision. (AR 1-3).

On December 1, 2014, Plaintiff filed a Complaint pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) alleging that the Social Security Administration erred in denying benefits. (Docket Entry No. 3). On April 14, 2015, Defendant filed an Answer to the Complaint, (Docket Entry No. 12), and the Certified Administrative Record ("AR"), (Docket Entry No. 13). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 9, 10). On November 25, 2015, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions on Plaintiff's claims. (Docket Entry No. 23).

## II. SUMMARY OF ALJ'S DECISION

The ALJ applied the five-step process in evaluating Plaintiff's case. (AR 18-19). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after the alleged onset date. (AR 19). At step two, the ALJ found that Plaintiff's severe impairments included degenerative disc disease of the lumbosacral spine, asthma, headaches, history of carpal tunnel syndrome, panic disorder, and history of polysubstance abuse. (AR 19). The ALJ determined, inter alia, that Plaintiff's bilateral shoulder pain and attention deficit hyperactivity disorder ("ADHD")

2

were non-severe. (AR 22-23). At step three, the ALJ found that Plaintiff's impairments did not meet or equal a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 23).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform at the "much reduced level of sedentary work" except: she could lift 10 pounds occasionally or frequently; she could sit for up to six hours and stand or walk up to two hours in an eight-hour day; she was precluded from working at heights or around hazards; she could push or pull occasionally; she could sustain fine and gross hand manipulation frequently; she was precluded from exposure to concentrated levels of inhalants, including dust, pollen, and other particulates; and she could sustain complex or detailed work frequently but not constantly. (AR 25-26).

In making her RFC finding, the ALJ determined that Plaintiff's pain levels were not consistent with objective evidence and clinical findings or with her self-reported daily activities. (AR 28). The ALJ also summarized and assigned weight to the opinions of two medical experts, two consulting examining physicians who had evaluated Plaintiff's physical and psychological symptoms, and Plaintiff's psychologist. (AR 28-30). The ALJ reviewed a Third Party Questionnaire completed by Plaintiff's brother but did not assign it weight or otherwise analyze it. (AR 27).

At step four, the ALJ determined that Plaintiff could return to her past relevant work as a telephone solicitor and receptionist.

(AR 30).   The ALJ also determined, alternatively, that Plaintiff could seek work as a PC board touch-up screener, addresser, document preparer - microfilming, or escort vehicle driver.   (AR 32). Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.   (AR 32).

## III. STANDARD OF REVIEW

This court reviews the Administration's decision to determine if the decision is free of legal error and supported by substantial evidence.   See Brewes v. Commissioner of Soc. Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012).   "Substantial evidence" is more than a mere scintilla, but less than a preponderance.   Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014).   To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion."   Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted).   As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ."   Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

## IV. PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ failed to: (1) make a finding regarding her credibility or provide specific, clear and convincing reasons for finding her not credible; (2) analyze her brother's Third

4

Party Questionnaire; (3) find that her ADHD and bilateral shoulder pain were severe impairments; (4) make an RFC determination that accounted for the combined effects of all of her impairments; and (5) ask the V.E. about a hypothetical individual suffering from all of her impairments. (Joint Stip. at 3, 29, 33, 42-43, 48-49).

## V. DISCUSSION

After consideration of the record, the Court finds that Plaintiff's third claim of error is without merit. The ALJ's error, if any, in failing to find that Plaintiff's ADHD and bilateral shoulder pain were "severe impairments" was harmless during step two of the five-step process. However, Plaintiff's fourth claim of error – the ALJ's failure to provide specific and legitimate reasons for rejecting the opinions of certain physicians, which likely affected the formulation of Plaintiff's RFC – warrants remand for further consideration. Since the Court is remanding the matter based on Plaintiff's fourth claim of error, the Court will not address Plaintiff's remaining claims.

**A.**   **The ALJ's Error, If Any, In Failing To Find That Plaintiff's ADHD And Bilateral Shoulder Pain Were "Severe Impairments" Was Harmless During Step Two Of The Five-Step Process**

Plaintiff asserts that the ALJ erred at step two in failing to find that her ADHD and bilateral shoulder pain were severe impairments. (Joint Stip. at 33, 36).

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. See Bowen v. Yuckert, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." Id. (citing Bowen, 482 U.S. at 153-54).

The Ninth Circuit has ruled that, when the ALJ has resolved step two in a claimant's favor, any error in designating specific impairments as severe does not prejudice a claimant at step two. See Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (even if ALJ erroneously failed to find an impairment "severe," this error "could only have prejudiced [the claimant] in step three (listing impairment determination) or step five (RFC) because the other steps, including [step two], were resolved in her favor"). Here, the ALJ found that Plaintiff had some severe impairments and resolved step two in her favor. Therefore, any error in failing to find that Plaintiff's alleged ADHD and bilateral shoulder pain were severe is harmless at step two.

**B.**   **The ALJ Failed To Make An RFC Determination That Accounted For The Combined Effects Of All of Plaintiff's Impairments**

Plaintiff contends that the ALJ erred in failing to consider the effects of her ADHD and bilateral shoulder pain in determining her RFC. (Joint Stip. at 42). Plaintiff claims that this failure stems from the ALJ's failure to deem her ADHD and shoulder pain "severe" due to an erroneous evaluation of the available medical evidence and opinions. (Joint Stip. at 33-36, 42-44).

An ALJ must consider the limiting effects of all of a claimant's impairments, even those deemed non-severe, in determining RFC. 20 C.F.R. § 416.945(e). Therefore, the ALJ's finding that Plaintiff's ADHD and bilateral shoulder pain were not severe did not necessarily bar their consideration in formulating an RFC.

An ALJ must take into account all medical opinions of record. 20 C.F.R. §§ 404.1527(b), 416.927(b). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). When a treating or examining physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. When a treating or examining physician's opinion is contradicted by another doctor, it may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record.

7

Id. at 830-31; see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

### 1.  ADHD

During an August 2011 doctor's visit, Plaintiff stated that her psychologist, Dr. Stephan Fleisher, had diagnosed her with ADHD. (AR 456). During doctor's visits in September 2011, October 2011, and July 2012, Dr. David McIntosh and other medical providers at Northeast Valley Health Corporation noted that Plaintiff had ADHD. (AR 453, 455, 517).

During an October 2011 consultative psychiatric evaluation before Dr. Sharmin Jahan, M.D., Dr. Jahan asked about Plaintiff's medical history, assessed her appearance, behavior, cooperation, speech, cognition, mood, affect, perception, thought processes and content, insight, and judgment, (AR 420-22), and opined that Plaintiff's history was "unreliable" and she did not appear to have "significant symptoms" of ADHD or any psychiatric limitations. (AR 423).

In a March 2012 Mental Disorder Questionnaire, Dr. Fleisher stated Plaintiff was "a ninth grade drop out due to ADHD combined type (314.01)." (AR 489). The Questionnaire stated that Plaintiff had been tested for ADHD on May 17, 2011 and had "significant results for inattention, impulsivity, lethargy, underachievement, irritability, and low frustration tolerance." (AR 490). Dr. Fleisher noted that Plaintiff had been prescribed Strattera but had

"a bad reaction including crying, fear, disorientation, and fear of losing control." (AR 490).

In May 2012, Dr. Gary Posner saw Plaintiff for an ADHD evaluation and renewed her Ritalin prescription, (AR 518), although Dr. Posner's treatment note does not discuss the evaluation. In summaries of subsequent visits in June and August 2012, Dr. Posner noted that Plaintiff had ADHD, and he adjusted her Ritalin dosage during that period. (AR 511-12, 513-14, 516-17).

During the January 14, 2013 hearing, Dr. Griffin testified that the record "indicate[d] or allege[d]" ADHD, but the information about that condition was "quite limited" and was based largely on Plaintiff's self-assessment. (AR 61-62, 68-69). Dr. Griffin stated that, even if Plaintiff had ADHD, it would likely have little effect on her ability to work "given the effectiveness of the medications for this condition." (AR 69). Dr. Griffin also observed that Plaintiff had been prescribed Strattera and had stopped taking it after one week because "it made her feel disconnected." (AR 62). Dr. Griffin concluded that Plaintiff's ADHD was not medically determinable. (AR 62). Dr. Griffin further testified that Plaintiff panic disorder would limit her ability to, inter alia, perform frequent complex and detailed work. (AR 62-63).

## 2. Bilateral shoulder pain

In March 2009, Dr. McIntosh referred Plaintiff to physical therapy for right shoulder pain, decreased range of motion, and

bilateral carpal tunnel syndrome. (AR 394-95). A May 2009 Therapy Progress Note indicated that Plaintiff was experiencing pain in her left upper trapezius and shoulder. (AR 386). During a May 2011 doctor's visit, Plaintiff reported that physical therapy was helping with her shoulder pain. (AR 330). Dr. McIntosh's August 2011 Adult Visit Note indicated that Plaintiff was suffering from severe ("9-10/10") pain in her right shoulder. (AR 456).

In October 2011, Plaintiff underwent an internal medicine consultation before consultative examiner Dr. Seung Ha Lim. (AR 412-15). Dr. Lim noted Plaintiff's complaints of, inter alia, bilateral carpal tunnel syndrome, (AR 412), but did not mention Plaintiff's shoulder pain. Following examination and testing, Dr. Lim opined that Plaintiff was able to carry fifty pounds occasionally and twenty-five pounds frequently and that her ability to push, pull, and reach overhead was unlimited. (AR 415).

During a November 2011 consultation with Dr. Insoo Kim, Plaintiff complained of "painful limit of motion of both shoulders," which she claimed had begun in 1996 but had become worse during the past three years and was worse with movement. (AR 464). Dr. Kim noted that Plaintiff had mild local tenderness and subacromial tenderness, and Plaintiff's impingement test was positive, although her x-rays were unremarkable. (AR 464). Dr. Kim diagnosed Plaintiff with shoulder impingement syndrome in both shoulders. (AR 464).

During May, June, and August 2012 office visits, Dr. Posner noted that Plaintiff suffered from chronic pain in joints "involving

[the] shoulder region." (AR 510, 513, 518). During a November 2012 office visit, Dr. Ruth Landsberger similarly noted that Plaintiff had chronic pain in joints "involving [the] shoulder region." (AR 507).

During the January 14, 2013 hearing, Dr. Maxwell testified that, based on his review of the medical records, Plaintiff's medical impairments included degenerative disc disease of the lumbosacral spine, asthma, chronic headaches, and a history of carpal tunnel syndrome. (AR 58). Dr. Maxwell stated that Plaintiff could lift and carry 10 pounds frequently and occasionally; was able to sit for six hours and stand and walk for two; could not climb ladders, ropes or scaffolds; should avoid unprotected heights and hazardous machinery; was limited to occasional pushing with lower extremities; should avoid concentrated dust, fumes, and odors; and was limited to frequent fine and gross manipulation with the upper extremities. (AR 59). The ALJ asked if there was "anything in the record to suggest any further greater limitations," and Dr. Maxwell responded "no." (AR 59).

### 3. The ALJ's Decision

In ruling that Plaintiff's shoulder pain and ADHD were non-severe at step two, the ALJ stated:

> [Plaintiff] has complained of bilateral shoulder pain, with
> limited range of motion, and worse pain with activity or
> motion. The records from the treating orthopedist indicate
> her x-rays were normal, she had a minimal limitation in her

11

range of motion, and there was mild tenderness on exam. There is insufficient evidence, therefore, from [Plaintiff's] own treating sources to support her allegations of pain and limited movement in her upper extremities. This alleged impairment therefore is non-severe. [. . . .]

[A]s discussed below, Dr. Griffin, the Medical Expert, testified at [Plaintiff's] January 14, 2013 hearing that her alleged [ADHD] was not a medically determinable impairment. It therefore does not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and is non-severe.

In making this finding, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments. These four broad functional areas are known as the "paragraph B" criteria.

The first functional area is activities of daily living. In this area, [Plaintiff] has no limitation. Her alleged limitations in this domain stem from her physical pain complaints.

The next functional area is social functioning. In this area, [Plaintiff] has no limitation. There has been an

insufficient offer of proof of limitations in this domain due to the alleged ADHD.

The third functional area is concentration, persistence or pace. In this area, [Plaintiff] has a mild limitation. She is given the benefit of the doubt in this finding.

The fourth functional area is episodes of decompensation. In this area, [Plaintiff] has experienced no episodes of decompensation which have been of extended duration. There has been no offer of proof of incidents which rise to the level of an episode of decompensation.

Because [Plaintiff's] alleged ADHD causes no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it is non-severe.

The limitations identified in the "paragraph B" criteria are not a[n] [RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental [RFC] used at steps 4 and 5 . . . requires a more detailed assessment. . . . Therefore, the following [RFC] assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(AR 22) (citations omitted).

13

In evaluating Plaintiff's RFC, the ALJ reviewed the medical evidence and assigned weight to five medical opinions. First, the ALJ summarized Dr. Lim's evaluation and concluded that other opinions should receive more weight because Dr. Lim's evaluation was not based on imaging reports. (AR 29).

The ALJ gave "great weight" to the opinion of Dr. Maxwell, who testified that Plaintiff's medically determinable impairments included only degenerative disc disease, asthma, headaches, and a history of carpal tunnel syndrome, and that Plaintiff was limited to "less than a full range of sedentary exertion." (AR 29-30). While acknowledging that Dr. Maxwell was a "non-treating, non-examining source," the ALJ noted that Dr. Maxwell had the opportunity to "review the complete exhibit file, including the MRI and other imaging reports," and that Dr. Maxwell's assessment seemed "generous" given Plaintiff's daily activities. (AR 30).

The ALJ also gave "great weight" to Dr. Jahan's opinion, which noted Plaintiff's alleged "attention and focus" problems but found that Plaintiff had no "psychiatric limitations" or "significant symptoms" of ADHD. (AR 29, 423). The ALJ gave even greater weight to the opinion of Dr. Griffin, who had testified that Plaintiff's ADHD was not a medically determinable impairment, noting that, like Dr. Maxwell's assessment, Dr. Griffin's assessment was based on "the complete medical file, as well as [Plaintiff's] hearing testimony." (AR 30).

The only other medical opinion evidence assigned weight by the ALJ was the March 2012 mental health assessment by Dr. Fleisher, who the ALJ noted had been identified as a treating source and a clinical psychologist.   (AR 29).   The ALJ gave the assessment "minimal consideration," finding that there were no clinical records confirming the treatment relationship between Dr. Fleisher and Plaintiff and no "objective psychological testing" establishing ADHD. (AR 30).   The ALJ also stated that no evidence confirmed a diagnosis of major depression or recurrent daily panic attacks, and that "[t]he report appear[ed] to be wholly based on self-reports by [Plaintiff]." (AR 30).   The ALJ also observed that the assessment was based in part on complaints of physical pain, which were outside Dr. Fleisher's area of expertise.   (AR 30).

**4.  Discussion**

Plaintiff's claims regarding her bilateral shoulder pain warrant remand.   During step two, the ALJ stated that records from Plaintiff's treating orthopedist, Dr. Kim, indicated normal x-rays, minimal limitation in Plaintiff's range of motion, and "mild tenderness" on exam.   (AR 22).   The ALJ concluded that there was "insufficient evidence . . . from [Plaintiff's] own treating sources to support her allegations of pain and limited movement in her upper extremities," and that her shoulder pain was non-severe.   (AR 22). The ALJ's opinion did not explicitly analyze Plaintiff's allegations of shoulder pain at steps four and five, although ALJ mentioned the presence of these allegations in summarizing medical records.   (AR 27).

Given the emphasis placed on the lack of medical evidence substantiating a shoulder impairment, the ALJ's step two finding may have been intended as a finding that Plaintiff's bilateral shoulder pain was not a medically determinable impairment.  <u>See</u> SSR 96-4P (1996) (a "symptom" cannot establish impairment unless there are "medical signs and laboratory findings" demonstrating the existence of a medically determinable impairment).  However, this appears to discount without meaningful explanation numerous medical records showing Plaintiff's history of treatment for shoulder pain, including Dr. Kim's diagnosis of shoulder impingement syndrome in both shoulders following a physical examination.  (AR 21, 464); <u>see also</u> <u>Kohzad v. Astrue</u>, 2009 WL 596609 at *8 (C.D. Cal. Mar. 3, 2009) (ALJ improperly failed to discuss numerous medical records substantiating claimant's condition, but instead "isolated findings in the record in order to support her nondisability determination"); <u>DeArmas v.</u> <u>Colvin</u>, 2013 WL 3776331 at *3-*4 (C.D. Cal. July 16, 2013) (shoulder impingement syndrome is a medically determinable impairment).

The ALJ may also have implicitly rejected contrary diagnoses or opinions in giving "great weight" to Dr. Maxwell's testimony that there was "nothing in the medical records" to suggest impairments or limitations beyond those that Dr. Maxwell assessed.  (AR 30). However, implicit rejection falls short of providing the "specific and legitimate" reasons required for rejecting the opinion of a treating physician, particularly in light of the record evidence of Plaintiff's diagnosis of shoulder impingement syndrome and treatment for shoulder pain.  <u>Cf.</u> <u>Lester</u>, 81 F.3d at 830-31 (9th Cir. 1995); <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007); <u>see also</u> <u>Caballero</u>

16

v. Colvin, 2015 WL 1097319 at *2 (C.D. Cal. Mar. 6, 2015) ("[T]he ALJ's conclusion that the limitations imposed . . . were 'not supported by the objective and clinical evidence of record' is difficult to reconcile with the various diagnostic reports finding at least some abnormalities in Plaintiff's knees and back."). Indeed, even the ALJ's reasons for assigning Dr. Maxwell's opinion "great weight" -- i.e., general statements that Dr. Maxwell, a non-treating, non-examining physician, had an opportunity to review the "complete exhibit file" and offered an assessment "consistent with [Plaintiff's] activities of daily living" -- are too brief and conclusory to adequately explain the ALJ's apparent rejection of Plaintiff's shoulder impairments.[1]

Plaintiff's allegations regarding ADHD present a closer question. The ALJ more clearly rejected this diagnosis by (1) observing during the step two analysis that Dr. Griffin testified that Plaintiff's ADHD was not a medically determinable impairment that "therefore does not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and is non-severe," (AR 23); and (2) crediting Dr. Griffin's opinion and

---

[1] It is also possible that the RFC's limitations on lifting, pushing, and pulling, (AR 25-26), were intended to account for Plaintiff's shoulder pain. However, the Court is unwilling to affirm on a basis not articulated by the ALJ, particularly given the importance of formulating an appropriate RFC and considering that Plaintiff's degenerative disc disease of the lumbosacral spine and carpal tunnel syndrome might have been the reason for the limitations on lifting, pushing, and pulling. See Ceguerra v. Sec. Health and Human Servs., 933 F.2d 735, 738 (9th Cir. 1991); see also McCawley v. Astrue, 423 F. App'x 687, 689 (9th Cir. 2011) (RFC determination "may be the most critical finding contributing to the final . . . decision about disability").

giving Dr. Fleisher's opinion "minimal consideration," in formulating an RFC, because the treatment relationship was not confirmed by medical records and the diagnosis was based on Plaintiff's self-reports rather than objective testing.  (AR 30).

"If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion.  However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion."  Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014) (letter and evaluations discussed various providers' observations, diagnoses, and prescriptions, in addition to claimant's self-reports, and ALJ "offered no basis for his conclusion that these opinions were based more heavily on [claimant's] self-reports, and substantial evidence [did] not support such a conclusion.").

Dr. Fleisher's assessment mentioned that Plaintiff was tested for ADHD on May 17, 2011, with "significant results" on several dimensions, (AR 490), and several other medical records assessed Plaintiff's ADHD and prescribed treatment for it, generally with no indication that the diagnosis was based on Plaintiff's own statements.  (See AR 453, 455, 456-57, 511, 514, 516-17, 518).  The Court finds these reports difficult to reconcile with the ALJ's apparent finding that Plaintiff's ADHD was not medically determinable or that the finding of ADHD was based on Plaintiff's self reports.  See Ghanim, 763 F.3d at 1162.  The medical records also reference a

18

treatment relationship between Plaintiff and Dr. Fleisher, (see AR 456), and, if additional records were necessary to substantiate Dr. Fleisher's test or the treatment relationship between Dr. Fleisher and Plaintiff, or to substantiate testing or evaluations performed by other physicians, the ALJ could have requested additional testimony or evidence. See Smolen, 80 F.3d at 1288 (ALJ has a "special duty" to fully and fairly develop the record, even where claimant is represented by counsel; if ALJ needed to know the basis for a physician's opinions to evaluate them, he "had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them").[2]  Remand is therefore also warranted with respect to Plaintiff's allegations of ADHD.

\\

\\

---

[2] After discussing Dr. Griffin's assessment during step two, the ALJ briefly analyzed the four functional areas for evaluating mental disorders and found that Plaintiff suffered from no more than mild limitations in any of the first three areas and no extended episodes of decompensation. (AR 23). Additionally, the ALJ limited Plaintiff to frequent, but not constant, complex or detailed work, (AR 26); this limitation may have been designed to fully account for Plaintiff's psychological impairments. (AR 30; but see AR 62-63 (Dr. Griffin recommending such limitations to account for Plaintiff's panic disorder)).  Therefore, the ALJ's failure to properly evaluate the medical evidence tending to support Plaintiff's ADHD may have been harmless.  However, the extent to which the ALJ's opinion was affected by an deficient evaluation of the medical evidence is unclear.  Moreover, as noted supra, the Court is unwilling to affirm on a basis not expressly articulated by the ALJ, see Ceguerra, 933 F.2d at 738, especially given the importance of the RFC determination in determining disability, see McCawley, 423 F. App'x at 689.  In any event, remand is warranted for other reasons; on remand, the ALJ may re-evaluate whether the RFC needs to be adjusted to account for Plaintiff's ADHD after the medical evidence is evaluated appropriately.

**C.   Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. <u>Id.</u> at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. <u>McLeod v. Astrue</u>, 640 F.3d 881, 888 (9th Cir. 2011); <u>Harman</u>, 211 F.3d at 1179-81.

Here, the Court remands because the ALJ did not properly consider the limiting effects of Plaintiff's ADHD and bilateral shoulder pain in determining the Plaintiff's RFC.. Because the record does not establish that the ALJ would necessarily be required to find Plaintiff disabled if these deficiencies were remedied, remand is appropriate.

The Court has not reached issues not discussed <u>supra</u> except to determine that reversal with a directive for the immediate payment of benefits would be inappropriate at this time. In addition to the issues addressed in this order, the ALJ should consider on remand any other issues raised by Plaintiff, if necessary.

## VI.   CONCLUSION

For the foregoing reasons, the decision of the Administrative Law Judge is VACATED, and the matter is REMANDED, without benefits, for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).


LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 28, 2016

                          _____/s/_____
                                ALKA SAGAR
                          UNITED STATES MAGISTRATE JUDGE